**UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK**

_____

ALLAH KASIEM,

               Plaintiff,                            DECISION & ORDER
                                                             02-CV-6465 CJS

      v.

ROBERT GUZMAN,
Deputy Superintendent,
Elmira Correctional Facility,

               Defendant.

_____

**APPEARANCES**

For plaintiff:                               Allah Kasiem, *pro se*
                                          83-A-0783
                                          Sullivan Correctional Facility
                                          Box 116, Riverside Drive
                                          Fallsburg, NY 12733-0116

For defendants:                            Benjamin A. Bruce, A.A.G.
                                          New York State Office of the Attorney General
                                          144 Exchange Boulevard, Suite 200
                                          Rochester, NY 14614

**INTRODUCTION**

Allah Kasiem ("Plaintiff"), a prison inmate in the custody of the New York State Department of Correctional Services[1] ("DOCCS"), brought this *pro se* civil rights action pursuant to 42 U.S.C. § 1983 against Robert Guzman ("Defendant") for an alleged violation

---

[1] The department has changed its name following a merger with the Division of Parole. The department is now known as the New York State Department of Corrections and Community Supervision.

of his rights under the Fourteenth Amendment (Doc. No.1.) Now before the Court is Defendant's motion for summary judgment (Doc. No. 15 ) and Plaintiff's cross-motion for summary judgment (Doc. No. 20.) For the reasons stated below, Defendant's motion is granted and Plaintiff's cross-motion is denied.

## BACKGROUND

The following facts are viewed in the light most favorable to the Plaintiff. At all times relevant, Plaintiff was an inmate in the custody of DOCCS and was incarcerated at the Elmira Correctional Facility ("Elmira"). Defendant was employed by DOCCS as the Deputy Superintendent at Elmira. (Def. Statement of Facts ¶¶ 1–4.)

On August 16, 1999, Defendant commenced Plaintiff's Tier III Disciplinary Hearing and served as Hearing Officer, following which he rendered a disposition of guilty. (*Id.* ¶ 4.) Plaintiff appealed and the determination was affirmed on October 13, 1999. (*Id.* ¶ 5.) On November 9, 1999, Plaintiff commenced an action in the New York State Court of Claims, alleging that the August 16, 1999, hearing violated New York State regulations and statutes. (*Id.* ¶ 6.) On October 25, 2005, a trial was conducted at which Plaintiff testified. The Court of Claims rendered a decision dismissing Plaintiff's complaint on November 3, 2005. (*Id.* ¶ 7.) *See Allah Kasiem v. State of NY*, #2005-019-035, Claim No.101387 (Nov. 3, 2005) (Def. Exh. E.)

Plaintiff's Disciplinary Hearing arose out of a Misbehavior Report issued to Plaintiff dated August 6, 1999, charging him with sex offense–soliciting, harassment, and bribery or extortion, for sending two sexually graphic letters to a female staff member and offering her gifts. (Def. Exh. A.) Each letter was addressed to "Ann Krutger" in the Guidance Unit, and each was delivered to and opened by Ann Krotzer ("Krotzer"), who was in fact a staff

member of the Guidance Unit. (Def. Exh. A; Hr'g Tr. at 2, Exh. B.) Shortly before the Misbehavior Report was issued, Plaintiff sent letters to Deputy Superintendent Raymond Doane ("Doane") explaining that he did not write the letters, and that another inmate was trying to set him up. (Def. Exh. F.) The letters written to Doane contained the same misspelling, "Krutger," as the letters received by Krotzer. (*Id.*)[2]

On August 13, 1999, Plaintiff submitted a memorandum to Defendant in connection with his Disciplinary Hearing entitled "Inmate Statement," in which he denied sending the graphic letters. He further argued that the misbehavior report was insufficient, since "Ann Krutger," not Ann Krotzer, was the intended recipient of the letters, and since Krotzer did not observe the person who mailed the letters or have direct knowledge of who may have done so. (Def. Exh. G.) The memo contained the same writing style contained in the letters, which included placing certain words and phrases in capital letters and bold font for emphasis. (Def. Exhs. A & G.)

At the hearing, Plaintiff pleaded not guilty to the charges, entered a statement on the record that he had been set up by another inmate, and claimed to have never seen the letters in question. (Hr'g Tr. at 4.) Defendant provided him with the letters' envelopes to review. (*Id.*) Plaintiff denied sending the letters, arguing that the misbehavior report was based on speculation and conjecture. He then called three employee witnesses to testify. (*Id.* at 5-6.) At the close of the Disciplinary Hearing, Defendant found Plaintiff guilty of the three charges, stating his reasons on the record. (*Id.* at 19.) Defendant then imposed six

---

[2]Plaintiff's letter stated, "R. Brown…wrote and sent those letters to Ms. Krutger and planted 4 greeting cards (2 cards in Kasiem's cell and 2 cards in Kasiem's desk at the Law Library) with similar language in a diabolical scheme to get rid of Kasiem. After Brown saw Kasiem talking to Ms. Krutger [sic], Brown devised a diajbolical [sic] scheme to set up Kasiem." (Def. Exh. F.)

months of confinement in the special housing unit ("SHU"), loss of packages, commissary, phone calls, and personal television. (*Id.* at 20.)

## STANDARDS OF LAW

*Summary Judgment Standard*

The standard for granting summary judgment is well-established. Summary judgment may not be granted unless "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). A party seeking summary judgment bears the burden of establishing that no genuine issue of material fact exists. *See Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157 (1970). "[T]he movant must make a *prima facie* showing that the standard for obtaining summary judgment has been satisfied." 11 MOORE'S FEDERAL PRACTICE, § 56.11[1][a] (Matthew Bender 3d ed.). That is, the burden is on the moving party to demonstrate that the evidence creates no genuine issue of material fact. *See Amaker v. Foley*, 274 F.3d 677 (2d Cir.2001). Where the non-moving party will bear the burden of proof at trial, the party moving for summary judgment may meet its burden be insufficient to carry the non-movant's burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

Once that burden has been met, the burden then shifts to the non-moving party to demonstrate that, as to a material fact, a genuine issue exists. Fed.R.Civ.P. 56(e); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). A fact is "material" only if the fact has some affect on the outcome of the suit. *Catanzaro v. Weiden*, 140 F.3d 91, 93 (2d

Cir. 1998). A dispute regarding a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. In determining whether a genuine issue exists as to a material fact, the court must view underlying facts contained in affidavits, attached exhibits, and depositions in the light most favorable to the non-moving party. *U.S. v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). Moreover, the court must draw all reasonable inferences and resolve all ambiguities in favor of the non-moving party. *Leon v. Murphy*, 988 F.2d 303, 308 (2d Cir. 1993); *Anderson*, 477 U.S. at 248-49; *Doe v. Dep't of Pub. Safety ex rel. Lee*, 271 F.3d 38, 47 (2d Cir. 2001), *rev'd on other grounds, Connecticut Dept. of Public Safety v. Doe*, 538 U.S. 1 (2003); *International Raw Materials, Ltd. v. Stauffer Chemical Co.*, 898 F.2d 946 (3d Cir. 1990). However, a summary judgment motion will not be defeated on the basis of conjecture or surmise or merely upon a "metaphysical doubt" concerning the facts. *Bryant v. Maffucci*, 923 F.2d 979, 982 (2d Cir. 1991) (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)); *Knight v. United States Fire Ins. Co.*, 804 F.2d 9 (2d Cir. 1986). Rather, evidentiary proof in admissible form is required. Fed. R. Civ. P. 56(e). Furthermore, the party opposing summary judgment "may not create an issue of fact by submitting an affidavit in opposition to a summary judgment motion that, by omission or addition, contradicts the affiant's previous deposition testimony." *Hayes v. New York City, Department of Corrections*, 84 F.3d 614, 619 (2d Cir.1996). Papers filed by a *pro se* litigant are to be read liberally and interpreted to raise the strongest arguments they suggest. *McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir.1999)).

*Irby Notice*

In their Notice of Motion, served on Plaintiff on March 30, 2007, Defendant provide the information required to given to pro se litigants under this Circuit's case law, Irby v. New York City Transit Auth., 262 F.3d 412 (2d Cir. 2001), in addition to the requirements of Western District of New York Local Rule of Civil Procedure 56(b). The Notice contains the following language:

> PLEASE BE FURTHER ADVISED, that pursuant to Local Rule 56 of the Western District of New York, you must include a separate, short and concise statement of any material facts as to which you contend there exist a genuine issue for trial.  In the absence of such a statement, all material facts set forth in defendants' Local Rule 56 Statement will be deemed admitted by affidavits or as otherwise provided in the rule, setting forth further specific facts showing that there are genuine issues of material facts for trial.  Any factual assertions in our affidavits will be accepted by the Court as being true unless you submit affidavits or other documentary evidence contradicting our assertions.  If you do not respond to the defendants' motion as described above, summary judgment, if appropriate, may be entered against you.  If summary judgment is entered against you, your case against the moving parties will be dismissed.
>
> PLEASE BE FURTHER ADVISED, that pursuant to Local Rule 56 of the Western District of New York, you must include a separate, short and concise statement of any material facts as to which you contend there exist a genuine issue for trial.  In the absence of such a statement, all material facts set forth in defendants' Local Rule 56 Statement will be deemed admitted.

(Def.'s Notice of Motion (Doc. No. 15) at 1–2.) 42 U.S.C. § 1983

*42 U.S.C. § 1983*

Plaintiff brings this action pursuant to 42 U.S.C. § 1983. "In order to maintain a section 1983 action, two essential elements must be present: (1) the conduct complained of must have been committed by a person acting under color of state law; and (2) the conduct complained of must have deprived a person of rights, privileges, or immunities

secured by the Constitution or laws of the United States." *Pitchell v. Callan*, 13 F.3d 545, 547 (2d Cir.1994).

## ANALYSIS

Defendant has moved for summary judgment on the grounds that the Disciplinary Hearing did not violate Plaintiff's due process rights, and that Plaintiff's claim is barred by the doctrine of collateral estoppel. The Court addresses the latter argument first.

### *Collateral Estoppel*

"[C]ollateral estoppel prevents a party from relitigating an issue decided against that party in a prior adjudication. It may be invoked to preclude a party from raising an issue (1) identical to an issue already decided (2) in a previous proceeding in which that party had a full and fair opportunity to litigate." *Curry v. City of Syracuse*, 316 F.3d 324, 331 (2d Cir. 2003) (citation and internal quotation marks omitted). "Additionally, the issue that was raised previously must be decisive of the present action." *Curry*, 316 F.3d at 331. Collateral estoppel may bar a plaintiff from bringing an action in federal court pursuant to 42 U.S.C. § 1983. *See Allen v. McCurry*, 449 U.S. 90 (1980).

The party seeking the benefit of collateral estoppel bears the burden of proving there is an identity of issue, whereas the party contesting its application bears the burden of proving that he did not have a full and fair opportunity to litigate the claims in the prior action. *Khandhar v. Elfenbein*, 943 F.2d 244, 247 (2d Cir. 1991); *D'Andrea v. Hulton*, 81 F.Supp.2d 440, 443 (W.D.N.Y.1999). To show an identity of issue, "the issue must have been material to the first action or proceeding and essential to the decision rendered therein ... and it must be the point actually to be determined in the second action or

proceeding such that a different judgment in the second would destroy or impair rights or interests established by the first." *Ryan v. New York Telephone Co.*, 62 N.Y.2d 494, 500-01, 478 (1984).

Defendant contends that collateral estoppel applies here because Plaintiff previously commenced an action in the New York Court of Claims alleging that the August 16, 1999, Disciplinary Hearing violated New York State regulations, in that Defendant improperly relied on information that was not introduced as evidence in finding Plaintiff guilty, resulting in a sentence of six months in SHU with additional deprivations. (Def. Exh. D.) As indicated above, following a trial at which Plaintiff testified, the Court of Claims dismissed Plaintiff's complaint, finding that Plaintiff "'fail[ed] to demonstrate the State violated the departmental rules and regulations regarding said hearing." *See Allah Kasiem v. State of NY*, #2005-019-035, Claim No.101387 (Nov. 3, 2005) (Def. Exh. E).

Plaintiff does not argue that he did not have a full and fair opportunity to litigate his claim in the New York Court of Claims. Rather, he contends that the Court of Claims did not address the issue of whether his federal due process rights were violated by the Disciplinary Hearing. (Pl. Mem. of Law at 11.) However, the fact that Plaintiff's present claim in this action arises under federal law, rather than the state law theory decided by the Court of Claims, does not exclude the possibility of applying collateral estoppel. *Jaffe v. Fitzgerald*, No. CV-06-0317, 2009 WL 804740 at *6 (E.D.N.Y. March 27, 2009). "Though there must be an identity of issues to apply collateral estoppel, this does not require that claim be based on the same provision of law." *Jaffe*, 2007 WL 804740, at *6 (citing *Ryan*, 62 N.Y.2d at 500). "Rather it requires that substantially the same specific legal or factual dispute was decided in the prior action." *Id.*

The issue that was determined at the Court of Claims—whether New York regulations[3] relating to prison disciplinary proceedings were violated when Defendant relied on information not introduced as evidence—was decided by Judge Ferris D. Lebous in the State's favor. Although Plaintiff claimed only violations of New York regulations in his complaint to the New York Court of Claims, those regulations are consistent with the minimal due process protections required by *Wolff v. McDonnell*, 418 U.S. 539 (1974).[4] *See Walker v. Bates*, 23 F.3d 652, 655 (2d Cir. 1994) ('[t]he procedures established by the New York regulations comport with the due process procedural rights in disciplinary proceedings to which prison inmates are entitled."); *see also* 7 N.Y.C.R.R. § 254, *et seq*. The issue determined at the Court of Claims is both material and essential to the issue to be decided by this Court relating to Plaintiff's Due Process claim against Defendant, namely, whether Defendant violated Plaintiff's constitutional rights by failing to conduct the Tier III Disciplinary Hearing in accordance with the standards set forth by *Wolff v. McDonnell*. Accordingly, a judgment in favor of Plaintiff on this claim would impair the finding by Judge Lebous in favor of Defendant that the Disciplinary Hearing was not violative of New York State regulations.

---

[3] In support of his contention in the Court of Claims, Plaintiff cited to 7 N.Y.C.R.R. § 254.6(c), which provides that an inmate present at a disciplinary hearing may respond to the charge and/or evidence, and submit any relevant evidence on his own behalf, and to 7 N.Y.C.R.R. § 250.2(d), requiring that disciplinary action be administered in a fair and impartial manner. (Def. Exh. D).

[4] *Wolff* holds that due process requires that prisoners in procedure resulting in loss of good-time or in imposition of solitary confinement be afforded advance written notice of claimed violation, written statement of fact findings, and the right to call witnesses and present documentary evidence where such would not be unduly hazardous to institutional safety or correctional goals. 418 U.S. at 564-567.

Here, there is a clear identity of issue between the Court of Claims action and the instant proceeding, which warrants application of collateral estoppel. *See, e.g.*, *Wright v. Coughlin,* No. 85 CIV 0624, 1987 WL 19633 (S.D.N.Y. Nov. 5, 1987) (New York Court of Claims decision given collateral estoppel effect in subsequent federal civil rights action where Court of Claims conclusively resolved the same set of facts on which both claims existed), *aff'd*, 868 F.2d 1268 (2d Cir. 1988).

Even assuming, *arguendo*, collateral estoppel did not serve to bar Plaintiff's federal claims, Plaintiff's claim still cannot survive Defendant's motion for summary judgment because he has failed to raise a triable issue of fact as to whether Defendant violated his due process rights in the Tier III Disciplinary Hearing.

***Plaintiff's Liberty Interest***

A prisoner has "a due process right to a hearing before he may be deprived of a liberty interest on the basis of a misbehavior report." *Boddie v. Schnieder*, 105 F.3d 857, 862 (2d Cir. 1997) (citation omitted). In regard to an inmate's claim that such due process rights were violated, the legal principles are well-settled:

> A prisoner asserting that he was denied due process in connection with prison disciplinary hearings that resulted in segregative confinement or a loss of privileges must make a threshold showing that the deprivation of which he complains imposed an "atypical and significant hardship on [him] in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995).

*Orelvis v. State of New York Dept. of Corr. Services*, No. 05-CV-6498, 2009 WL 1663996, *8 (W.D.N.Y. Jun. 15, 2009). "The circumstances that the court must examine include 'the extent to which the conditions of the disciplinary segregation differ from other routine prison conditions[ ] and ... the duration of the disciplinary segregation imposed compared to

discretionary confinement.'" *Orelvis*, 2009 WL 1663996 at *8 (quoting *Wright v. Coughlin*, 132 F.3d 133, 136 (2d Cir. 1998)).

Defendant does not argue that Plaintiff's 180-day sentence in SHU was not atypical or significant, and does not provide any factual basis upon which the Court could so find. On the other hand, Plaintiff states that he was deprived of congregational religious services, direct access to various institutional services, contact visits, packages, a typewriter, radio and television, personal clothing, and recreation, among other things. (Pl. Statement of Facts ¶ 4). Accordingly, the Court assumes, without deciding the issue, for the purposes of this motion only, that Plaintiff's 180-day stay in SHU constituted an atypical and significant hardship sufficient to raise a protected liberty interest. *See Sira v. Morton*, 380 F.3d 57, 69 (2d Cir. 2004) ("we assume, without deciding, that Sira's six-month confinement in the special housing unit imposed an atypical hardship entitling him to due process."); *Luna v. Pico*, 356 F.3d 481, 487 (2d Cir. 2004) ("We assume, without deciding the issue, that Luna did suffer an 'atypical and significant hardship'.").

Notwithstanding the assumption that Plaintiff has shown the deprivation of a liberty interest, as discussed below, the Court determines that Plaintiff does not raise a triable issue of fact as to whether Defendant violated his due process rights in the Tier III Disciplinary Hearing.

 ***Due Process and Prison Disciplinary Proceedings***

Although an inmate facing disciplinary charges is not entitled to the full panoply of due process rights that one is entitled to in a criminal trial, there are nevertheless certain minimum procedural safeguards that must be provided under the Constitution. For example, an inmate subject to a disciplinary hearing is entitled to: "(1) advance written

notice of the charges against him, (2) the opportunity to call witnesses and present documentary evidence in his defense and (3) a written statement of the evidence relied upon and the reasons for the disciplinary action." *Shell v. Brzezniak*, 365 F.Supp.2d 362, 376 (W.D.N.Y.2005) (citing *Wolff v. McDonnell*, 418 U.S. 539, 563-67 (1974)).

The Second Circuit has also "held that, at a minimum, a prisoner is entitled to be 'confronted with the accusation, informed of the evidence against him ... and afforded a reasonable opportunity to explain his actions.'" *Francis v. Coughlin*, 891 F.2d 43, 47 (2d Cir. 1989) (quoting *Sostre v. McGinnis*, 442 F.2d 178, 198 (2d Cir. 1971)). *See also Gates v. Selsky*, No. 02-CV-496, 2005 WL 2136914, at *10-*11 (W.D.N.Y. Sept. 2, 2005) ("Inmates have a well established due process right, at a minimum, to knowing the evidence that confronts them in a disciplinary hearing," since "such disclosure affords the inmate a reasonable opportunity to explain his actions and to alert officials to possible defects in the evidence") (quoting *Sira v. Morton*, 380 F.3d 57, 74 (2d Cir. 2004)).

As previously indicated, Plaintiff complains that he was denied due process at his Disciplinary Hearing because Defendant relied on documents not introduced as evidence. Specifically, Plaintiff challenges Defendant's reliance upon evidence of Plaintiff's "previous pattern of [harrassing] behavior," which resulted in his placement in the Close Supervision Unit at another correctional facility, as well as "incidents with women outside of correctional facilities." (Hr'g Tr. at 19.) However, Plaintiff was informed of the allegations against him, including the basis for Krotzer's report, which included "a history of writing suggestive letters." (Def. Exh. A.) At the Disciplinary Hearing, Plaintiff denied writing any letters of that nature to female staff, and called two female staff witnesses who testified that they had never received letters of that nature from Plaintiff. (Hr'g Tr. 11-16.) Moreover, the hearing

transcript reveals that Plaintiff did not dispute that he had a history of writing suggestive letters or harassing behavior. Moreover, he did not request to see the evidence referred to in the hearing.[5] (*Id.*)

At the conclusion of the hearing, Defendant found Plaintiff guilty and placed on the record the following reasons for his determination: (1) Krotzer's report was clear and credible; and (2) the circumstantial evidence was overwhelming, which included: (a) the letters sent to Krotzer and correspondence from Plaintiff to DOCCS staff containing the same typing/writing style; (b) Krotzer's name was similarly misspelled on the letters and in correspondence from Plaintiff to Doane and to Defendant; and (c) although Plaintiff initially alleged that he had not seen the letters purported to have been sent by him, he provided a written statement to Defendant on August 13, 1999, referring to the letters addressed to "Ms. Krutger," again containing the same misspelling as the letters received by Krotzer. (Hr'g Tr. at 19.) Furtherrmore, Defendant told Plaintiff, "your previous pattern of such behavior is noted in your placement in CSU at Shawangunk as well as with incidents with women outside of correctional facilities." (Hr'g Tr. at 19.)

Here, Plaintiff was afforded advance notice of the charges and evidence against him, the opportunity to present evidence and call witnesses, and he received an itemized statement of the evidence relied upon in the disposition. Accordingly, the Court finds that Defendant conducted the Tier III Disciplinary Hearing in accordance with the standards set forth in *Wolff* and the New York regulations providing for a fair and impartial disciplinary action.

---

[5] Presumably, Plaintiff is well aware of the information contained in his own institutional files.

To the extent Plaintiff claims that the evidence was insufficient to support Defendant's disposition, this contention also fails. To withstand constitutional scrutiny, "prison discipline decisions ... must be 'supported by some evidence in the record.'" *Sira*, 380 F.3d at 76 (citing *Superintendent v. Hill*, 472 U.S. 445, 454 (1985)). The relevant question in reviewing such decisions is "whether there is any evidence in the record that could support the conclusion reached" by the hearing officer. *Id.* (citing *Hill*, 472 U.S. at 455–56).

The memorandum submitted by Plaintiff to Defendant prior to the hearing supports the allegations that the graphic letters were written by Plaintiff. Both the letters and the memorandum contained the same writing style of placing certain words in bold font in capital letters for emphasis, (Def. Exh. G), as did the letter addressed to Doane (Def. Exh. F). Plaintiff did not contest that he had a history of writing harassing letters to women, but rather argued that even if he did previously write letters of that nature, such evidence was not so substantial as to warrant a finding of guilt in the instant matter. (Hr'g Tr. at 5–6.) The misspelling of Krotzer's name as "Krutger" on the letters was also present on the August 12, 1999, letter to Doane, despite Plaintiff's allegation that he never saw the letters that were the subject of the Misbehavior Report prior to the hearing on August 16, 1999. (Def. Exhs. A & F; Hr'g Tr. at 7.) Plaintiff's defense to the charges was that he was set-up by another inmate, and, after his own investigation, he became aware of who typed the letters. However, Plaintiff refused to disclose the source of that information at the hearing. (Hr'g Tr. at 8.)

Having reviewed the transcript and record of Plaintiff's Disciplinary Hearing, the Court finds that there was sufficient evidence in the record to support Defendant's guilty

findings, and the evidence is therefore sufficient to meet the constitutional standard set forth in *Hill*.

For all of the foregoing reasons, Defendant's motion for summary judgment is granted, and Plaintiff's cross-motion for summary judgment is denied.

## CONCLUSION

Defendant's summary judgment motion (Doc. No. 15 ) is granted, Plaintiff's cross-motion for summary judgment (Doc. No. 20) is denied, and this action is dismissed. The Court hereby certifies, pursuant to 28 U.S.C. § 1915(a), that any appeal from this Order would not be taken in good faith and leave to appeal to the Court of Appeals as a poor person is denied. *Coppedge v. United States*, 369 U.S. 438 (1962). Further requests to proceed on appeal *in forma pauperis* should be directed on motion to the United States Court of Appeals for the Second Circuit in accordance with Rule 24 of the Federal Rules of Appellate Procedure.

DATED: September 15, 2011
          Rochester, New York

                    ENTER:

                              /s/ Charles J. Siragusa
                              CHARLES J. SIRAGUSA
                              United States District Judge